LEWIS T. HADDICK, Plaintiff, v. THE DISTRICT COURT OF POLK COUNTY, IOWA, and HON. HUGH BRENNAN, one of the Judges thereof, Defendants.

Estates of Decedents: ADMINISTRATORS: REMOVAL: JURISDICTION.
1  The court has no power to remove an administrator on the ground that the interests of the estate demand it, except upon compliance with the statutes providing for the filing of a petition specifying the grounds of complaint, citation and opportunity to be heard; at least in all cases where the statutory provisions are adequate.

Same: ILLEGAL REMOVAL: REVIEW OF ORDER: CERTIORARI. A motion to set aside a summary order removing an administrator, without the filing of a petition and an opportunity to be heard as provided by statute, is a proper remedy for seeking a nullification of the illegal order, even though not asking a hearing in support of the motion; and its consideration by the court did not cure the illegality of the order- of removal, or waive the right to its review by certiorari.

Same: CERTIORARI: APPEAL. Certiorari will lie to review an illegal order summarily removing an administrator without a petition therefor and hearing thereon as required by statute, there being no adequate remedy by appeal because of the absence of a formal record on which an appeal could be based and the absence of an adverse party on whom notice of appeal could be served, although an appeal might lie from an order overruling a motion to set aside the order of removal.

*Certiorari to Polk District Court.*—HON. HUGH BRENNAN, Judge.

FRIDAY, JUNE 6, 1913.

THIS is a certiorari proceeding brought by the plaintiff in this court. The petition challenges the legality of certain orders of the defendant as district judge of Polk county and avers the same to be illegal and void on the ground that they were entered without authority of law and in excess of jurisdiction. We are called upon to review the legality of the order complained of.—*Reversed* and *Remanded.*

*B. J. Cavanaugh, Parker, Parrish & Miller,* and *Jacob Sachs,* for plaintiff.

*H. W. Byers* and *George Wambach,* for defendants.

EVANS, J.—The order complained of was entered upon the probate records of the district court "In the Matter of the Estate of Hans H. Bohstedt, Deceased." The plaintiff was the duly appointed, qualified, and acting administrator

of such estate and had been such since March 7, 1912. On December 30, 1912, a summary order was entered by the defendant as district judge, peremptorily removing the plaintiff as administrator of such estate and appointing another as his successor. No removal proceeding had been instituted against the plaintiff by any person prior to such order, nor was any such proceeding pending at the time of such order. The details leading up to such order are made to appear in the defendant's return to the writ. On December 21st the plaintiff made formal application to the court for the appointment of B. J. Cavanaugh as his attorney in the administration of the estate; his former attorney having died on December 9th preceding. On December 26th the following resistance was filed against the employment of Cavanaugh as attorney:

Come now Marx Christian Bohstedt, Dorothea Ibs, and Freidrich Bohstedt, heirs at law of said Hans H. Bohstedt, deceased by their attorney, George Wambach, and in resistance to the application filed by the administrator herein for authority to employ counsel, states:

(1) That the application made by said administrator for authority to appoint counsel is unwarranted.

(2) That there are no contested claims pending against this estate which require the services of additional counsel. .

(3) That the assets of said estate consist of moneys in the bank, certificates of deposit, and mortgage securites which have been reduced to possession, and with reference to which there is no impending litigation, and no occasion for incurring expenses for additional counsel with respect to said property; the attorney for the heirs having been employed to perform legal services in the administering of said estate.

(4) That all matters in connection with said estate requiring the services of an attorney have been performed by George Wambach, since his appointment herein by this court. That the only matter requiring the services of an attorney has reference to the settlement with the state of Iowa, for the collateral inheritance tax due said state under the laws of the state of Iowa, and that the said George Wambach, attorney for the heirs herein, has performed all services necessary to be performed in respect to said collateral inheritance tax,

and is to perform all services in the future relative thereto, to the end that settlement may be had with the state of Iowa, for the amount due it as collateral inheritance tax from said estate, and the securing by the said George Wambach as attorney of a waiver of appraisement and securing the proper and necessary receipts from the State Treasurer for said tax. That all of said services have been performed by the said George Wambach on behalf of said heirs at their instance and request, and in pursuance of his appointment herein as attorney, and the order entered heretofore allowing him compensation for services rendered and to be rendered in connection with the administration of and closing of said estate.

(5) That there was filed in this estate a claim in behalf of John Haddick, a claim aggregating about the sum of $14,450. That said claim was based upon an alleged oral agreement by and between the said John Haddick and Hans H. Bohstedt, deceased, some thirty years ago, by the terms of which it is alleged that the said Hans H. Bohstedt agreed verbally to contribute his share of maintaining a home. That the said John Haddick, said claimant, is the father of Lewis T. Haddick, the administrator herein. That the said Lewis T. Haddick within a short time of his appointment herein, caused a special administrator to be appointed herein and said claim brought on for hearing and trial. That at the trial of said cause, evidence was introduced for and on account of an alleged board bill. That the said Lewis T. Haddick caused said claim to be brought on for hearing before the court without making any effort to ascertain the heirs of the said Hans H. Bohstedt, and under the representations that no heirs were in existence. That the court, before whom said claim was heard, was not satisfied with this statement and representation made by the administrator, and appointed George Wambach, a member of the bar, as counsel in said estate, to investigate and ascertain if any such heirs were living. That the said George Wambach within two months from the time of his said appointment ascertained that the said Hans H. Bohsedt left him surviving one sister, one brother, and a half-brother, residing in Germany; proofs of heirship being on file in the office of the clerk in said cause. That immediately upon the filing of the proofs of heirship as aforesaid, the administrator herein and Walter McHenry, the attorney for John Haddick, approached the said George Wambach, with a proposition of settlement of the said claim of John Had-

dick, and entered into negotiations with the said George Wambach, looking to a settlement of said claim. That a stipulation of settlement approved by this court was entered into by and between the said John Haddick, acting by and through his said attorney Walter McHenry, and his said son. Lewis Haddick, the administrator herein, and the heirs of Hans H. Bohstedt acting by and through their attorney, George Wambach, and the said Lewis Haddick acting as the administrator of said estate. That during said negotiations for the settlement of said claim, the said Lewis T. Haddick was endeavoring to secure for his said father, the claimant, as large a sum as possible without regard to the rights of the heirs in the premises, and that whereas Walter McHenry, acting as the attorney for the said John Haddick, was willing to compromise and settle said claim for the sum of fifteen hundred dollars, which amount was to include attorney's fees, the said Lewis T. Haddick was not willing to assent thereto, but was insisting that the estate pay a larger sum than said fifteen hundred dollars, but finally assented to said amount and entered into said stipulation as aforesaid.

(6) That the said George Wambach, since his appointment herein by the court, has performed all legal services necessary to be performed in regard to said estate and under his contract of employment with the heirs herein, and the order of court allowing him compensation, the said George Wambach is to perform all future legal services necessary to be performed in the final settlement of said estate and on account thereof there is no necessity of the appointment of additional counsel herein. That, if said additional counsel shall be appointed, it will impose additional burdens upon the heirs and those interested in said estate which they should not be called upon to bear.

(7) That the said Lewis T. Haddick has stated to George Wambach, attorney for the heirs and the estate herein, that he proposed to present and file a claim against said estate in the sum of about $400 for alleged services rendered by him, the said Lewis T. Haddick, and his wife, in caring and treatment of the deceased, Hans H. Bohstedt, during his last illness. That the said George Wambach informed the said Lewis T. Haddick that if such a claim were filed and he was of the opinion that the same was exorbitant, or should not be allowed, that it would be his duty, acting for and on behalf of said estate and the heirs having an interest therein, to

resist the payment of such claim; that the only services that
are necessary to be performed in said estate have to do with
the proposed alleged claim of said Lewis T. Haddick, and that
by reason and on account of the conduct of the said Lewis T.
Haddick, in respect to the matters to which reference has
been made, and on account of the fact that the appointment
of additional counsel herein is sought by him for the pur-
pose of subserving his own personal interest and claim, that
the application for the appointment of additional counsel
should be denied.                    George Wambach,
                                     Robt. O. Brennan,
                                     Attys. for the Heirs.

To go back in point of time, in July, 1912, Wambach had
been appointed by the same court as special counsel to discover
foreign heirs to the estate, if any; Bohstedt being without
known relatives in this country. At the time of Wambach's
appointment, there was pending a claim against said estate
for $14,000, for alleged board for thirty-two years; the same
having been filed by the father of the plaintiff herein. Evi-
dence had been heard in support of such claim, but decision
thereon was reserved pending the search for heirs. The value
of the estate was between $17,000 and $18,000, consisting in
the main of moneys and credits. Some weeks after his ap-
pointment and before December 7th, Wambach reported dis-
covery of three heirs, being a sister and two brothers of the
deceased. Formal proofs were filed in Polk county to that
effect. Wambach also reported that he had been employed
as attorney for such heirs and filed or exhibited a power of
attorney to that effect. He entered into negotiations with
the opposing attorney for a compromise of the $14,000 claim.
Such negotiations resulted in a compromise of settlement for
$1,500. This compromise agreement was submitted to the
court and approved by it on December 7th. At the same time
the court entered an order allowing Wambach an attorney fee
of $1,750. The amount of this fee was fixed in pursuance of
a showing by Wambach that such was his agreement with his
clients, the same to be in full of all services on his part, past

and future, in the settlement of all matters pertaining to such estate. It was in pursuance of this employment that Wambach and R. O. Brennan as attorneys resisted the application for the appointment of Cavanaugh as attorney for the estate; such resistance being filed on December 26th, as already indicated. On December 28th, the plaintiff withdrew the application for appointment of Cavanaugh and filed another motion directed against George Wambach and R. O. Brennan, attorneys, and served notice thereof upon them. The notice stated that the application would come on for hearing on January 9th before Judge DeGraff, to whom the probate calendar was assigned for the year 1913. This application asked that said attorneys be required to pay back the $1,750 attorney's fees. It charged that the same was obtained fraudulently and illegally. In this application Cavanaugh acted as attorney for the plaintiff and signed the application as such. The application is lengthy and we will not set it out. The trial judge undoubtedly felt that the indirect effect of the charges in such application was to impugn his own integrity, although such intent was disclaimed by plaintiff's attorney. December 28th was on Saturday. On Monday, December 30th, the application came to the attention of the trial court. It does not appear that there was any matter pending as to said estate on the assignment of the court for that date. The case, however, was called and the following oral proceedings were had over the objection of the plaintiff's attorney:

*Oral Statement of George Wambach to Court.*

We desire, if the court please—George Wambach and R. O. Brennan, attorneys for the estate and the heirs, give notice that they will file an application for the removal of the administrator upon the grounds that the administrator has personal claims which he has filed in this court for himself and his wife, and which would require the appointment of a special administrator, and further that in view of the feeling that has been engendered in this case by making im-

proper charges, the interest of the heirs of this estate are the better served by the appointment of another administrator; that the administrator has represented to this court that there are no heirs surviving the said Hans H. Bohstedt, deceased, and applied for the appointment of an administrator, designating himself as such; that subsequently and within a short time after his appointment, he allowed a claim to be presented to the court by his father, John Haddick, based upon an alleged verbal agreement by the terms of which it is alleged the said Hans H. Bohstedt was to contribute towards the support of the family; that the said alleged parol agreement was entered into more than thirty years ago; that in the hearing the administrator failed to represent the estate in a proper and suitable manner, allowing the evidence to come before this court on said hearing based on a board bill; during all of said hearing, he represented to this court that there were no heirs, and the case was finally submitted to your honor for determination and judgment. Pending this, your honor made an investigation with a view of locating or attempting to locate some of the heirs, and there being German documents in the possession of your honor, I was called upon to interpret or translate some of the papers. Some of them showed correspondence between the deceased and a brother. When this was made apparent to the court, I was asked whether I would act as a special counsel with a view of determining whether there were heirs or not. In consequence of my appointment, I discovered and located three heirs, a sister, a brother, and a half-brother. Proof of heirship was filed in this court certified by the proper authorities and is now on file. That immediately at the request of these heirs, I filed a motion to set aside the submission of this case and, pending the submission, overtures were made of a settlement and the claim running to nearly $15,000 was finally compromised and settled for $1,500 and a stipulation was signed by the heirs of the deceased, through me as their attorney, the administrator of the estate, and the claimant, all parties recognizing thereby the heirs whose proof of claim was on file. This stipulation, after it was signed, was submitted to the court for confirmation, and by an order of the court the settlement agreed upon by the parties was confirmed. An order was entered into, which is on file in this case, providing that the compensation of the attorney should be fixed at $1,750, which was done on the production of an agreement which existed between George

Wambach and the heirs, of which proof is filed, and no contest pending in this court showing that they are not the heirs.

In view of the action of the administrator in bringing these personal claims, we ask that an administrator may be appointed and that the present administrator be removed.

### Oral Objection of Administrator.

The administrator objects to the statement just made by Mr. Wambach and moves that it be stricken for the reason that the same is immaterial, incompetent, and irrelevant to any issue now pending or before the court.

### Oral Statement of R. O. Brennan to Court.

May it please the court, at this time I want to have it appear of record, and make the request that any further proceedings in connection with this matter be sent to the other judges of this court for the reason that certain charges are made in the motion filed in this cause late Saturday night, of which I did not have notice until this morning, which not only reflect on me, but in a measure reflect upon this court. That my connection with this case dates from a time after the appointment of George Wambach, the attorney herein for the heirs and said estate. He requested me to assist him in ascertaining the heirs, if any, of Hans H. Bohstedt, and in pursuance of his request I made a visit to the city of Chicago and took up the matter with the Imperial German Consul, and through his assistance located the heirs whose names have been mentioned in connection with the record, and proof of heirship now on file in the office of the clerk. So far as I am personally concerned, I shall not take part in any proceeding before his honor, Judge Brennan, and request as a personal matter to me that the charges which have been made against me shall be fully and thoroughly investigated by this court, and I do now request that your honor report said matter to the other judges of this court for the purpose of making a full and fair investigation of all the matters alleged and set forth in the application of the administrator herein, for an order to set aside the compensation heretofore granted George Wambach.

### Oral Objection of Administrator.

MR. CAVANAUGH : We make the same objection as to the statement of Mr. Wambach.

COURT : On or about the 31st day of July, 1912—

Mr. Cavanaugh : Will your honor pardon me just a second. I want to make a suggestion. If your honor is going now to pass upon the motion which I understand to be pending for this morning, or which the court may consider to be pending for this morning, or upon the motion in summary proceedings, I would like to file first a motion to have the hearing transferred to some judge other than your honor.

### Oral Statement of Court.

Court : I am going to make a record here just the same. I will consider the transfer hereafter. I do not like to have this case run around to every judge in the courthouse. This is a very simple matter; this is no different from any other estate; we have them by the thousands here. It is not difficult at all.

On or about the 31st day of July, 1912, the matter of the estate of Hans H. Bohstedt, deceased, was transferred by Judge McHenry to this court or this division for a hearing. Walter McHenry appeared as counsel for one Haddick, the father of the present administrator, and asked that the court allow a claim of $14,000, for a board bill for thirty-two years. And the administrator represented to the court that there were no heirs, that, if there were any, it was only a very remote distant cousin, so the administrator stated, and that this claim ought to be allowed, and his counsel also insisted that it be allowed as a board bill. The court heard the evidence of the witnesses from the state of Illinois; several witnesses here testifying that the court took the matter under advisement. In the meantime, the court was desirous of having this estate go to the proper persons, the blood relations, if any. If the claimant was not entitled to his claim, and then if there were no heirs, the state of Iowa would be interested and Mr. Cosson should be advised. In the meantime, the court appointed

Mr. Wambach, a man familiar with the German language, and, these persons being German, to find out whether there were any real heirs of this deceased. Within, I think, ninety days, proof satisfactory to this court after a thorough examination, a careful examination, was produced showing these persons, I. think one brother, one half-brother, and a sister living in Germany. I had not yet decided the matter of the claim, and Mr. McHenry came in and said they had agreed to settle the claim for $1,500, with which I was satisfied, whatever the heirs did, recognizing them as such, it was perfectly satisfactory to the court.

The claim of the attorney's fee, the court understood was an agreement between the attorney, Mr. Wambach, and these heirs, and he was going to have 10 per cent. of whatever was collected, if no litigation followed; if litigation followed, it was to be more. And in view of the agreement and the contract between the heirs, the court recognized, I felt no hesitation in signing an order approving their claim. That is all the court did, a very simple matter.

Now, I have read an attack made here by Mr. Haddick, the administrator, upon this court, showing lack of respect for the court, as an officer of the court, claiming that this court has allowed $1,750 of an attorney's fee to Mr. Wambach which was procured by deceit and by the influence of an attorney at this bar who is my son, and other details and claims which are very offensive to the court. The court was going to direct an order that this administrator be removed and that will be the order of this court, that the administrator be immediately removed from further acting in this case, and that he report fully to this court his proceedings in the case, and that all papers and matters be transferred and turned over to the administrator who will be appointed by this court to care for this estate.

The further order of this court is that the counsel Mr. Cavanaugh, who was the agent for the bond company of the administrator, and who claims to appear here as counsel by his appointment and asking the approval of the court, and sought another judge to procure an order appointing him, when it was well known to the parties that these matters were here in this court transferred by the very judge whom they procured to sign the order.

From the allegations made in this matter that is filed here of which the court is apprised and has read, the further order

of the court is that Mr. Cavanaugh, who appears here as an attorney, be given ten days from this date to show cause why he is not in contempt of this court. The court reserves the right to consider whether this administrator shall be hereafter notified to appear for contempt.

That will be the order of the court, and, Mr. Wambach, you will please prepare that order. Now you can have this case transferred to whatever judge you please.

Mr. Wambach: Will the court appoint John Hogan of the German Savings Bank as administrator?

We will consider him. Now, Mr. Cavanaugh, you have acted very discourteous and very offensive to the court. You have come in here and accused the court, through his son, and through Mr. Wambach, of things that are not true, and I want you to come in and purge yourself at that time of contempt. That is all I care to hear or say.

### Oral Statement of Administrator in Reply to Statement of Court, etc.

The administrator and B. J. Cavanaugh both object to the statements made by the court and both disclaim any intention to perform or commit any act or deed which might be construed to be or constitute contempt of this court, for which both the administrator and the said B. J. Cavanaugh always have had and still have the highest and greatest respect; and both the administrator and the said B. J. Cavanaugh desire the record at this time to show absolute absence on their part of any intention to make any statement, or that any statement which they or either of them may have made heretofore could or can be construed to be a contempt of this court. The administrator further objects to the foregoing statement of the court for the reason that there is not on file, and there has not been heretofore, any finding to the effect that the alleged heirs or claimants of this estate are—

Court: You can prepare your defense. I do not care for anything further at this time. You have a certain time fixed to purge yourself of contempt.

Mr. Cavanaugh: Isn't this the time to note exceptions to the statements of the court?

Court: Make your exceptions. Show you except to the statement, but I do not think you have any right to go on

and make the statement. The counsel is granted an exception of all the statements made by the court. That is all that is necessary. The rest of the matter that he has got there will be stricken from the record.

Excepted to.

In pursuance of this oral order and announcement, a formal written order was signed and entered on the following day. This is the order that is challenged by the plaintiff as being illegal and in excess of the power and jurisdiction of the court.

The provisions of our statute on this subject are as follows:

Section 3416: After letters testamentary, of special administration or of administration with the will annexed, or general administration, shall have been granted to any person, he may be removed by the court or judge thereof, when the interests of the estate require it, for any of the following causes: (1) When by reason of age, continued sickness, imbecility, or change of residence, or any other cause, he becomes incapable of discharging his trust in such manner as the interest and proper management of the estate may require. (2) When he shall fail or refuse to return inventories or accounts of sales of the estate, or to make reports of the condition thereof, or fails or refuses to comply with any order or judge thereof, or fails to seasonably apply for authority to sell personal or real estate for the payment of debts or claims against the estate when it shall be necessary for him to do so, or fails or refuses to discharge any of the duties prescribed for him by law, or shall be guilty of any waste or maladministration of the estate, or where for any other reason it appears for the best interests of the estate. (3) Where it is shown to the court or judge thereof by his sureties that he has become or is likely to become insolvent, in consequence of which such sureties have suffered or will suffer loss.

Section 3417: Petition for the removal of executors or administrators, or for the purpose of requiring additional sureties, shall be filed in the court from which the letters were issued by any person interested in the estate, which petition

must be verified by oath, and specify the grounds of complaint.

Section 3418: Upon the filing of such petition, a citation shall issue to the person complained of, requiring him to appear and answer the complaint, and if he is not a resident. of the county where it is made, notice thereof shall be served upon him in such manner as the court or judge thereof or clerk may direct.

It will be noted that in the case before us there was no petition, no specified grounds of complaint, no citation, no opportunity for answer, no time set for hearing, no hearing in fact, and no opportunity for testimony.

1. ESTATES OF DECEDENTS: administration: tors': removal: jurisdiction.

It is not contended by appellee that the provisions of the statute were complied with. The argument is that, independent of and beyond the statute, the court has inherent power to remove an administrator when the interests of the estate require it. We will not now speculate as to whether a case might arise which might be beyond the contemplation of the statute and in which protection to an estate might be sought in the inherent power of the court. It is clear that the provisions of the statute were adequate to the present case. Counsel for defendant cite us no authority in support of the proposition and we find none. We find much authority to the contrary. In the following cases it was held that the power of the court to remove a guardian or an administrator is defined by the statutory provisions in relation thereto: *In re Raynor,* 74 Cal. 421, (16 Pac. 229); *Levering v. Levering,* 64 Md. 399, (2 Atl. 1); *Vail, Adm'r v. Givan,* 55 Ind. 59; *Dunlap v. Kennedy,* 73 Ky. (10 Bush) 539; *Isaacs v. Taylor,* 3 Dana (Ky.) 600; *Miller v. Hider,* 9 Colo. App. 50, (47 Pac. 406); *Munroe v. People,* 102 Ill. 410; *Godwin v. Hooper,* 45 Ala. 613. We think there is no escape from the conclusion that the distinguished trial judge in a moment of indignation exceeded his power and that the order thus entered was illegal in the statutory sense.

It appears that, some days after the entry of the order complained of, the plaintiff herein filed a motion before the same court to set aside such order as being illegal and void and in excess of jurisdiction. The grounds of such motion were the same as those later presented to this court in the petition for the writ. On January 18, 1913, such motion also was overruled. It is urged now on behalf of the defendant that the filing of this motion and the consideration thereof by the court cured all illegality and lack of power in the original order.

2. SAME: illegal removal: review of order: certiorari.

It may be conceded that if the plaintiff by such motion had invoked the jurisdiction of the court to a hearing upon the original merits, and if in pursuance thereof a hearing had been had upon the original merits, it would have cured the illegality in such sense that a writ of certiorari would not lie. Such was the case of *Ellis v. Remley,* 115 Iowa, 381, cited by defendant's counsel. In the case before us the motion of plaintiff to set aside the order challenged the legality of such order in precisely the same manner that the petition for a writ challenges it here. One ground for the motion did charge that there was no hearing upon the merits and no opportunity for a hearing and no opportunity to show cause. But it did not invoke a hearing upon the merits as a ground of sustaining the motion. By reference to the oral proceedings already quoted, it will be noted that the plaintiff insistently asked that a hearing be had before another judge. It is urged that a hearing on the merits was in fact had before the motion was ruled on. In this contention, reference is had to the contempt proceeding against Cavanaugh which arose out of the application of December 28th. The contempt proceeding was heard on January 18th before the same judge. It is said that the evidence in that case was applicable to the motion and was so considered by the judge. We find no order or record that would justify such contention. Nor is such evidence presented to us by either abstract except by this reference. If the plaintiff had appealed from the order over-

ruling his motion on January 18th, we find nothing in the record that would have enabled him to present here as a part of his record the evidence in the contempt proceeding against Cavanaugh. It is clear therefore that the filing of plaintiff's motion was an appropriate method of seeking a nullification of the illegal order in the court below and he did not thereby waive his right to an appropriate writ from this court.

It is further urged that certiorari will not lie because the plaintiff has a plain, speedy, and adequate remedy by appeal. Referring to the order of December 30th, there was no formal record upon which an appeal could be based. There was no adverse party before the court upon whom service of notice of appeal could be made. The proposed application for removal of the administrator which the attorney for the heirs said he would file was not filed. If the plaintiff could be deemed in court at all for the purpose of the proceeding, he was there without an adversary—and yet was beaten.

3. SAME: certiorari: appeal.

It may be that the plaintiff could have appealed from the order of the court overruling his motion to set aside. The heirs, by Wambach, appeared in resistance to such motion. The effect of the resistance was to defend the legality of the former order. Facts also were pleaded in the resistance bearing upon the merits. But if a hearing on such facts were permissible at all, there is no record that any hearing was had. The net result of the entire proceeding was that the court overruled the motion to set aside as peremptorily as it had entered the original order. We think therefore that the remedy of certiorari was available to the plaintiff. It will be noted from what has already been said that the record in this case at some points touches the record in the contempt proceeding against Cavanaugh, which is a separate case pending in this court and which has not yet reached our consideration. For this reason we have refrained from setting out the application of December 28th, upon which the contempt proceeding appears to have been based and have refrained from

forming any opinion or giving any consideration to the merits of that case, and nothing herein is intended as an intimation of view on any feature of such case.

For the reasons indicated the order of removal must be annulled, and it is so ordered. This order will necessarily be without prejudice to the right of any party in interest to institute statutory proceedings.

*Reversed* and *Remanded.*